IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TINA M. RANDOLPH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1836 |
| | § | |
| DIMENSION FILMS *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this action brought under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*, plaintiff Tina M. Randolph, the author of a book published by her "dba," Rhapsody Publishing, alleges that the defendants infringed on her copyright. The book is *Mystic Deja: Maze of Existence*, the first of an anticipated twelve-volume science-fiction series. Randolph published it in December 2002. In this suit, she alleges that the defendants' motion picture, *The Adventures of Shark Boy and Lava Girl in 3-D*, infringed on her copyrighted book. Randolph also asserts claims for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and for violations of the Texas Deceptive Trade Practices Act (DTPA), TEX. BUS. & COM. CODE §§ 17.45(4), 17.50.

The defendants, Dimension Films, Miramax Film Corp., SONY Pictures Entertainment, Inc., Buena Vista Home Entertainment, Inc., Columbia Pictures Industries, Inc., The Walt Disney Co., Troublemaker Studios, Robert Rodriguez, Racer Max Rodriguez, and Elizabeth Avellan, have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Randolph attached to her complaint cover artwork from the book and from the allegedly infringing movie, as well as a press release for the series and part of the book. The defendants attached to their motion to dismiss

a copy of Randolph's book and of their movie, which this court has read and watched. The defendants assert in their motion to dismiss that the movie and the plaintiff's book are so dissimilar as to defeat the copyright infringement claim as a matter of law. The defendants also assert that the unfair competition claim and the DTPA claim fail to state a claim on which relief can be granted.

Based on a careful review of the complaint, the motion, and response, the movie and book, and the applicable law, this court grants the motion to dismiss, without leave to amend. The reasons are stated below.

**I.     The Legal Standards**

    **A.     Motion to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated the Supreme Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 127 S. Ct. at 1969 ("*Conley's* 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1974).

A "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965). "'Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests.'" *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1965 n.3). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1964–65); *see also In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1965). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 127 S. Ct. at 1966).  Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *See Elsensohn*, 530 F.3d at 371–72.

When a plaintiff's complaint must be dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,

3

313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citations omitted). However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'") (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)); *see also Great Plains Trust Co.*, 313 F.3d at 329.

In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, but that includes attachments thereto. FED. R. CIV. P. 12(b)(6). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1998). In so attaching, the defendant merely assists the plaintiff in

4

establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.

### B.     Copyright Infringement

To prove copyright infringement, a plaintiff must show ownership of a valid copyright and actionable copying. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Galiano v. Harrah's Operating Co., Inc.*, 416 F.3d 411, 414 (5th Cir. 2005). "A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist*, 499 U.S. at 361). When, as here, there is no direct evidence of copying, the second element requires the plaintiff to prove that the defendants had access to the plaintiff's copyrighted work and that there is substantial similarity of protected elements between the two works. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). "Substantial similarity" may often be decided as a matter of law, on either a motion to dismiss or on summary judgment. *See, e.g., Tabachnik v. Dorsey*, 257 F. App'x 409, 2007 WL 438196, at *1 (2d Cir. Dec. 13, 2007) (Rule 12(b)(6)); *Burt v. Time Warner, Inc.*, 213 F.3d 641, 2000 WL 328117, at *2 (9th Cir. Mar. 24, 2000) (Rule 12(b)(6)); *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004) (Rule 56); *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (Rule 56).

A court must compare the copyrighted work and the accused work to determine whether there is substantial similarity between the protectable elements in the works, determining whether there are articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. A court must distinguish between the protectable and unprotectable material because a party claiming infringement may place "'*no* reliance upon any similarity in

expression resulting from' unprotectable elements." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)). Copyright law does not protect an idea, but only "the expression of an idea." *Williams v. Crichton,* 84 F.3d at 587. The defendants do not challenge Randolph's claim to a valid copyright in the novel. The issue is whether there is substantial similarity between the protectable elements of Randolph's work and the defendants' movie. *Id.*

## II.  Analysis

### A.  The Copyright Infringement Claim

The side-by-side comparison of the plaintiff's book and the defendants' movie leads to the conclusion that there is no substantial similarity in the protectable elements of the works. The basic elements of plot, themes, dialogue, mood, setting, pace, characters, and sequence of events – and the overall concept and feel of both works – are very different.

*Mystic Deja: Maze of Existence* features as its protagonist Deja Chanel, an 18 year- old girl whose mother died in childbirth. Her father is an inventor of the "Sole Receptacle," a "gateway to the mind's eye." His consciousness becomes trapped in this world of imagination that he created. With the help of her boyfriend, Joshua, and a close female friend, Kyra, Deja uses a modified version of the "Sole Receptacle" to enter the realm of imagination to find her father and try to save him. As a guide in the realm of imagination, Deja uses her father's journal, in which he recorded his experiments and inventions. The journal marvelously updates with new entries and instruction to help Deja search for her father's consciousness.

The plot revolves around the mental and physical challenges Deja faces in battling an "emergist," Great Reign, as she tries to find her father's consciousness. "Emergy" is mind's energy;

an "emergist" is able to use the mind's energy to make the mind's thoughts a reality. Great Reign wants to rule by killing other emergists, taking their power for his own to control the dream world, destroying the boundaries between sections of the universe necessary for order and ultimately taking over the universe. Deja takes instruction from an "emergist" named Zim Logi in learning to control her own "emergy."

The novel ends without an end to the journey or battle. Deja's search for her father's consciousness must continue. She is a strong and confident young adult who becomes stronger and more confident as she overcomes obstacles and enemies. The novel is designed for "young adults" and explores "infinite levels of the human psyche."

By contrast, the movie is a "family adventure" featuring "pint-sized action masters." The protagonist is a ten year-old boy named Max. His parents fight, he hates school, he is bullied, and he has no friends. He is an outcast with little confidence. The story is based on a dream world that Max invents as a retreat from his loneliness and problems.

Max writes his dreams down in a journal. He finds that he can make the dreams a reality on the imaginary "Planet Drool." On this planet, he meets Sharkboy and Lavagirl. Planet Drool is a "kid paradise" that features such child-pleasing whimsical elements as a "train of thought" that travels to the "Land of Milk and Cookies." The plot involves Max's battle with "Mr. Electric" and his sidekick "Minus," who is a dream version of "Linus," the bully Max faces in the real world. Mr. Electric powers Planet Drool; he is a dream version of Mr. Electricidad, Max's teacher. In the movie, Max saves his dream world by persuading Minus to restore it to its original condition. Mr. Electric leaves the dream world and comes to Max's school. Max returns to real life and works with his classmates to defeat Mr. Electric. Max's parents overcome their marital problems. At the end,

Max has ended his difficulties with Minus; saved Planet Drool; regained a happy relationship with his father, and won his classmates' approval.

Besides the differences between the plots and the main characters – the 18 year-old confident girl who is the protagonist in *Mystic Deja* and the 10 year-old outcast boy who is the protagonist in *Sharkboy* – the other characters in each work are also very different. In *Mystic Deja*, the sidekicks are Joshua and Kyra in the real world and Sil and Celeste in the realm of imagination. They have no special powers, although they all know some form of martial art. Joshua is a regular teenage boy who drives a sports car, plays a guitar, and is smart. Kyra is a teenage girl with a sense of humor. Sil lives in a tree with his family in a swamp. Celeste is an orphan whose parents were killed by Great Reign's army of drones or zombies, created from the people whose "emergy" he stole. By contrast, Sharkboy and Lavagirl are cartoonish characters with special powers. Sharkboy is a boy who was raised by fish after a shipwreck that separated him from his father. Sharkboy has gills, shark teeth, and fins and goes into a frenzy when angered. In the movie, Max is able to provide Sharkboy with hope that he will find his father. The movie ends with Sharkboy becoming King of the Ocean and searching for his father in the ocean, using a submarine. Lavagirl is made of lava, has no family, and is angry at Max for making her so destructive. Max helps her realize that she is not destructive but a constructive source of light.

The antagonists are also very different. In *Mystic Deja*, the antagonist is the megalomaniacal emergist, Great Reign. In *Sharkboy*, the antagonists are Mr. Electric and Minus, a dream counterpart to people who torment Max in real life.

In addition to the character and plot differences, the themes and tone are very different. *Mystic Deja* is a science-fiction work for young adults, featuring 18 year-olds. The themes are the

"human psyche" and the power of the mind, conscious and otherwise; *Sharkboy* is a children's fantasy that features ten year-olds and has as its themes how to overcome loneliness and deal with bullies.

Randolph argues that both the book and the movie involve a dream world, a dream journal, "shape shifting" creatures, a bike, and attacking fish, to support her claim of substantial similarity. The general concept of an imaginary world or realm, or of a character searching for a father, cannot be copyrighted. *See Williams v. Crichton*, 84 F.3d at 589 ("While both . . . works share a setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers, these settings are classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo."); *Reyher v. Children's Television Workshop*, 533 F.3d 87, 92 (2d Cir. 1976) (concept of child searching for lost mother not copyrightable). The expressions of these ideas are copyrightable but in this case, are not substantially similar.

In the book, Deja searches for her father's consciousness in an imaginary realm created by a machine. In the movie, Max creates a dream world to escape his real-life problems. The journals in the two works are very different. The journal in *Mystic Deja* was created by Deja's father, who can update it with new entries despite his unconscious state. Deja uses the journal to help as she tries to find and save her father's consciousness and battle Great Reign. The journal in *Sharkboy* is Max's own journal about his dreams. Max's journal is stolen by Linus, the boy who bullies him in real life, and is used by the dream antagonist, Minus, to try to ruin Planet Drool.

Both works contain a version of a bike, but again, they are very different. In *Mystic Deja*, the bike flies and allows Deja to escape from one terrain in the imaginary realm and enter another. In *Sharkboy*, the bike is made of lava and does not fly or allow the characters to escape.

Both works contain beasts, but different beasts. In the movie, Minus and Max duel and each create a cloud of objects. Minus makes a cloud of piranhas that Max captures in water bubbles. Max makes a cloud of butterflies. *Mystic Deja* features a butterfly, but not as part of a battle. Deja makes a butterfly appear to show that she has learned to "emerge" objects.

Randolph also argues that there are visual similarities between the graphics in the book and the movie. She points to a picture of the "Mecca of Ice" at the end of the book and a picture of an "Ice Castle" in the movie. Contrary to the plaintiff's argument, the "Mecca of Ice" and the "Ice Castle" do not have "substantially similar aesthetics." The picture of the Mecca of Ice in the book looks like the skyline of a city seen from a distance. In the movie, the Ice Castle appears briefly as a tall single ice tower, surrounded by a circular ice road.

In general, the physical "aesthetics" and tone of the two works are very different. The mood and appearance of the book is black and gothic. The movie is bright and busy, featuring "3-D special effects" (the glasses come with the DVD).

Randolph argues that the themes in the book and movie, of searching for one's father and the "true identity of power that he or she possesses," are substantially similar. Copyright law does not protect an idea, but only "the expression of an idea," *Williams v. Crichton,* 84 F.3d at 587, and the works must share a "similarity of expression," *Hogan v. DC Comics,* 48 F. Supp. 2d 298, 309 (S.D.N.Y. 1999) (similarity of expression is evinced by "similarities of treatment, details, scenes, events and characterization, or a similarity in their total concept and feel") (internal quotations and citations omitted). Differences in total concept and feel are important in determining the degree of similarity between the two works. *See Williams,* 84 F.3d at 589 (affirming summary judgment against the plaintiff, a children's author, and holding that "the total concept and feel of the two

works differ substantially" when the defendants' works are "high-tech horror stories with villainous characters and gruesome bloodshed" and the plaintiff's are "adventure stories and, although suspenseful in places, have happy endings."); *Hogan,* 48 F. Supp. 2d at 311 (the differences in the plaintiffs' and defendants' expression of similar ideas, "including the differences in [the works'] total look and feel, the interactions of the characters and the plot," were "so pronounced" as to preclude finding of substantial similarity).

The themes that Randolph identifies – searching for one's father and identifying one's strengths – appear in innumerable works of literature and are the stuff of many books, plays, and movies. The presence of these themes in the book and movie does not make them substantially similar. "Material or themes commonly repeated in a certain genre are not [protectable] by copyright," nor are "so-called *scenes à faire.*" *American Direct Mktg.,* 783 F. Supp. 84, 95 (E.D.N.Y. 1992); s*ee also Brown v. Perdue,* No. 04 Civ. 7417, 2005 WL 1863673, at *8 (S.D.N.Y. Aug. 4, 2005) (noting, in response to the plaintiff's argument that Dan Brown's *The Da Vinci Code* infringed on his books that also incorporate religious themes, that the ideas and themes "find their origin in historical facts, events and figures, as well as pre-existing works"); *Tisi v. Patrick,* 97 F. Supp. 2d 539, 543 (S.D.N.Y. 2000) (structural similarities between the parties' musical compositions "are not significant because they are uniformly shared with most modern popular rock music"); *Historical Truth Prods., Inc. v. Sony Pictures Entm't, Inc.,* No. 93 Civ. 5529, 1995 WL 693189, at *8 (S.D.N.Y. Nov. 22, 1995) ("[C]onspiracies, characters with superhuman qualities, and advanced technology . . . are unoriginal and uncopyrightable stock elements of the action-adventure and science fiction film genres"); *Jones v. CBS, Inc.,* 733 F. Supp. 748, 754 (S.D.N.Y. 1990) ("basic plot ideas" are not protectable); *Russ Berrie & Co. v. Jerry Elsner Co., Inc.,* 482 F. Supp. 980, 986

11

(S.D.N.Y. 1980) (shared characteristics of both parties' Santa toys of a "traditional red suit and floppy cap, trimmed in white, black boots and white beard" and "nose like a cherry" are common to all Santas and not probative of copying). The similarities that Randolph asserts are either stock elements of science-fiction or adventure stories or plot elements that naturally flow from the broad themes that the two works share with many other works.

In sum, the record shows no substantial similarity between the two works. The motion to dismiss the Copyright Act claim is granted. Because any attempt to amend would be futile, the dismissal is without leave to amend.

### B. The Unfair Competition Claim

Randolph alleges a claim under the Lanham Act, 15 U.S.C. § 1125(a). She argues that this is a "reverse passing off claim" based on the defendants' false designation of the origin and authorship of the movie as their work rather than Randolph's.

The Lanham Act does not protect an author's expression from false designation. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). The phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id*. The copyright and patent laws, not the Lanham Act, protect originality or creativity. *Id*.

In the complaint, and in response to the motion to dismiss, Randolph does not argue that the defendants offered for sale tangible goods that she produced, but that they copied from a book the she wrote in creating the movie. Such conduct does not give rise to a claim under the Lanham Act. The claim is dismissed for failure to state a claim upon which relief can be granted, without leave to amend.

**C.     The Texas Deceptive Trade Practices Act Claim**

The defendants move to dismiss the Texas DTPA claim on the basis that it is preempted by the federal Copyright Act. The Copyright Act generally preempts state law claims that are equivalent to any of the exclusive rights created by the copyright law. *See* 17 U.S.C. § 301(a). In determining whether a state-law claim is preempted by federal copyright law, the court applies a two-part test. *See Daboub v. Gibbons,* 42 F.3d 285, 288–89 (5th Cir. 1995). First, the court examines whether the claim falls within the subject matter of copyright as defined by 17 U.S.C. § 102. Next, the cause of action is examined "to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106," which gives copyright owners the exclusive right to authorize reproduction, adaptation, publication, performance, and display of their copyrighted works. *Id.*; *see also Keane v. Fox Television Stations, Inc.,* 297 F. Supp. 2d 921, 944 (S.D. Tex. 2004). "The second condition requires a comparison of the nature of the rights protected under federal copyright law with the nature of the state rights for which the plaintiff seeks protection." *Sefton v. Jew,* 201 F. Supp. 2d 730, 745 (W.D. Tex. 2001). If the defendants' alleged acts would violate both state law and federal copyright law, then the state right is deemed "equivalent to copyright ." *Id.* (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772, 787 (5th Cir.1999)). However, if the plaintiff has alleged facts corresponding to an "extra element," such as a breach of fiduciary duty that would render his claims "different in kind from a copyright infringement claim," then his state law claims are not preempted. *Id.*; *Keane,* 297 F. Supp. 2d at 945.

In this case, the gravamen of the plaintiff's complaint is the wrongful copying of her work and the distribution of the infringing work. The state-law DTPA claim is preempted by the

Copyright Act claim. *See Daboub,* 42 F.3d at 289 (finding preemption where "[t]he core of each . . . state law theor[y] of recovery . . . [wa]s the same: the wrongful copying, distribution, and performance" of musical lyrics); *Sefton,* 201 F.Supp.2d at 746 (the state law conversion claim was preempted because the plaintiff's complaint alleged "only one set of operative facts" and alleged no "conduct by Defendants to support his conversion claim that is qualitatively different from the conduct alleged to support his copyright infringement claim"); *Keane,* 297 F. Supp. 2d at 945 (the state law claims – including unfair competition and misappropriation claims – were preempted when "[t]he core of each of [the plaintiff]'s state law claims [wa]s identical: the wrongful copying of an idea for a talent show"). Randolph has alleged no facts that could support a recovery of damages based on state law unfair competition, misappropriation, and unfair trade practices claims that would be "different in kind" from the wrongful use of her copyrighted book.

At the initial conference in this case, Randolph agreed that the DTPA claim was preempted. The DTPA claim is dismissed.

**III.    Conclusion**

For the reasons stated above, the defendants' motion to dismiss is granted without leave to amend. A separate order of dismissal will be entered.

SIGNED on February 17, 2009, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge