**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TINA M. RANDOLPH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1836 |
| | § | |
| DIMENSION FILMS *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Tina M. Randolph, seeks reconsideration of this court's order entered on February 17, 2009, granting the defendants' motion to dismiss her copyright infringement claim under Federal Rule of Civil Procedure 12(b)(6), without leave to amend. The defendants are Dimension Films, Miramax Film Corp., Sony Pictures Entertainment, Inc., Buena Vista Home Entertainment Inc., Columbia Pictures Industries, The Walt Disney Co., Troublemaker Studios, Robert Rodriguez, Racer Max Rodriquez, and Elizabeth Avellan. Randolph contends that this court erred in concluding that there was no substantial similarity between her book, *Mystic Deja: Maze of Existence*, and the defendants' motion picture, *The Adventures of Shark Boy and Lava Girl in 3-D*. (Docket Entry No. 34). The defendants have responded to the motion to reconsider. (Docket Entry No. 42). The defendants have also moved for an award of attorneys' fees and costs under 17 U.S.C. § 505 in the amount of $36,565.15. (Docket Entry No. 32). Randolph has responded, (Docket Entry No. 41), and the defendants have replied, (Docket Entry No. 45).

Based on a careful review of the motions, responses and reply; the record; and the applicable law, this court denies Randolph's motion for reconsideration and grants the defendants' motion for attorneys' fees in part, awarding $3,816.73 in fees and $1,288.27 in costs.

1

The reasons for these rulings are set out in detail below.

## I.    The Motion for Reconsideration

Randolph sued under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*, alleging that the defendants' 2005 movie, *The Adventures of Shark Boy and Lava Girl in 3-D* (2005), infringed the 2002 copyright on her book, *Mystic Deja: Maze of Existence*.  Randolph attached to her complaint cover artwork from the book and from the allegedly infringing movie, as well as a press release for the series and part of the book.  The defendants moved to dismiss on the ground that the movie and book were so dissimilar that the claim for copyright infringement failed as a matter of law.  The defendants attached to their motion a copy of the entire book and movie.  After reviewing the complaint, the motion and the response, and the attached movie and book, the court granted the defendants' motion to dismiss without leave to amend.  (Docket Entry No. 30).  Randolph contends that this court clearly erred in concluding that there was no substantial similarity between the two works and in denying leave to amend.  Randolph seeks leave to supplement her pleadings with additional exhibits that she contends will aid the court in identifying points of substantial similarity between the two works. (Docket Entry No. 34 at 9).  The defendants respond that dismissal under Rule 12(b)(6) without leave to amend was proper, and that neither the record nor Randolph's proposed additional materials provide a basis for reconsideration.  (Docket Entry No. 42 at 1).

### A.    The Legal Standard for a Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration.  *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997).  Reconsideration motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b).  *Hamilton Plaintiffs v. Williams*

2

*Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998).  If a motion for reconsideration is filed within ten

days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion;

otherwise, it is treated as a Rule 60(b) motion.  *Id.* (internal citations omitted); *see also Lavespere*

*v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) ("Under which Rule the

motion falls turns on the time at which the motion is served.  If the motion is served within ten days

of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls

under Rule 60(b)."), *abrogated on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.

1994) (en banc).  Randolph's motion was filed within 10 days of this court's entry of final judgment.

Rule 59(e) applies.

A Rule 59(e) motion "calls into question the correctness of a judgment."  *Templet v.*

*Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d

571, 581 (5th Cir. 2002)).  "A motion to alter or amend the judgment under Rule 59(e) 'must clearly

establish either a manifest error of law or fact or must present newly discovered evidence' and

'cannot be used to raise arguments which could, and should, have been made before the judgment

issued.'"  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v.*

*United States*, 891 F.2d 1154, 1159 (5th Cir.1990)).  Relief is also appropriate when there has been

an intervening change in the controlling law.  *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563,

567 (5th Cir. 2003).  Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or

present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping Co.*

*v. Baker,* --- U.S. ---, 128 S.Ct 2605, 2617 n.5 (2008) (quoting 11 Charles A. Wright *et al.*,

Federal Practice & Procedure § 2810.1, at 127–28 (2d ed.1995)).  "A Rule 59(e) motion is not

a 'vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised

before the entry of judgment' but instead has a 'narrow purpose of allowing a party to correct

manifest errors of law or fact or to present newly discovered evidence.'" *Baldwin v. Layton,* 300 F. App'x 321, 323–24 (5th Cir. 2008) (quoting *Templet*, 367 F.3d at 479).

**B.     Analysis**

**1.     Substantial Similarity May Properly Be Decided on a 12(b)(6) Motion to Dismiss**

Randolph contends that dismissal under Rule 12(b)(6) on the basis of lack of substantial similarity was improper because in copyright cases, "'a determination of substantial similarity should typically be left to the fact-finder.'" (Docket Entry No. 34 at 4 (quoting *King v. Ames*, 179 F.3d. 370, 376 (5th Cir. 1999)). Randolph also contends that this court applied the wrong Rule 12(b)(6) standard. Randolph cites *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000), which cites the Supreme Court's opinion in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), for the proposition that "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and should rarely be granted." (Docket Entry No. 34 at 4). Neither argument is a basis for reconsideration.

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). *Twombly* abrogated *Conley v. Gibson*, 355 U.S. at 45–46 (1957), which held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63 ("*Conley's* 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also*

4

*Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  In *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*.  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).  *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Complaints alleging copyright infringement are no exception to this rule and can be decided as a matter of law.  "To determine whether an instance of copying is legally actionable, a side by side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 2004).  A determination that no substantial similarity exists as a matter of law is "appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression.'" *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (citing *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 395 (5th Cir. 2001)); s*ee also Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 766 (2d Cir. 1991) (upholding district court's conclusion that there was no substantial similarity as a matter of law); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999) ("[N]on-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.") (citations omitted)).

When the original work and the allegedly infringing copy are submitted with the pleadings and available to the court for side-by-side comparison, substantial similarity can be decided on a Rule 12(b)(6) motion to dismiss.  *See Christianson v. West Pub. Co*., 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *Rosenfeld v. Twentieth Century Fox Film*, No. Cv. 07-7040, 2009 WL 212958, at *3 (C.D. Cal. Jan. 28, 2009) (citing *Christianson*; dismissing with prejudice under Rule 12(b)(6) after finding no substantial similarity); *Capcom Co. v. The MKR Group, Inc*., No. C. 08-0904, 2008 WL 4661479, at *11 (N.D. Cal. Oct. 20, 2008) (same); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131, 1139 (C.D. Cal. 2007) (same); *Tabachnik v. Dorsey*, 257 F. App'x 409, 410 (2d Cir. 2007) (upholding dismissal of the plaintiff's copyright infringement claim with prejudice based on comparison of the plaintiff's doctoral dissertation and excerpts from the defendant's work);  *Taylor v. IBM*, 54 F. App'x 794, 2002 WL 31845220, at *1 (5th Cir. 2002) (upholding dismissal with prejudice of a copyright infringement claim under Rule 12(b)(6)); *Nelson v. PRN Prods., Inc*., 873 F.2d 1141, 1143 (8th Cir. 1989) (upholding dismissal with prejudice of copyright infringement claim alleging actionable copying of plaintiff's song lyrics by the artist Prince; noting that "[t]he District Court had before it . . . complete copies of both [plaintiff's] song and Prince's and was therefore in proper position to apply the substantial similarity test").

In this case, Randolph attached excerpts from her book and the defendants' movie to her complaint, along with copies of art work.  The defendants attached complete copies of both the book and the movie to their motion to dismiss.  Randolph does not dispute that these were properly considered as part of the pleadings.  *See Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993); *Collins*, 224 F.3d at 498–99 ("Documents that a defendant attaches to a

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). This court performed a side-by-side comparison of the works and concluded that the allegedly copied elements did not involve protected expression or would not strike a layperson as being substantially similar. (Docket Entry No. 30 at 12). This court's dismissal of Randolph's copyright claims under Rule 12(b)(6) does not provide a basis for reconsideration. In concluding that there was no substantial similarity between Randolph's book and the defendants' movie, this court also found that any attempt to amend would be futile. This conclusion as to futility flowed from the "nature and grounds for the[ ] dismissal[ ]." *Capcom*, 2008 WL 4661479, at *1. Substantial similarity is determined by side-by-side comparison of the works. This court had and used complete copies of the works in deciding the motion to dismiss. Only the works themselves are probative in a substantial similarity analysis. *See Peel & Co.*, 238 F.3d at 398 (substantial similarity is to be determined "without any aid or suggestion or critical analysis by others") (citing *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 18 (9th Cir. 1933); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.03[E][1][a], at 13-79 (2000)).

The works themselves, which this court fully considered, were not substantially similar. No pleading amendment by Randolph could change the works. When a claim of substantial similarity is dismissed a matter of law, dismissal with prejudice is the logical result. *See, e.g., Rosenfeld*, 2009 WL 212958, at *3; *Capcom,* 2008 WL 4661479, at *11; *Zella*, 529 F. Supp. 2d at 1139; *Tabachnik*, 2007 WL 4386196, at *1; *Taylor v. IBM*, 54 F. App'x 794, 2002 WL 31845220, at *1; *Nelson v. PRN Prods., Inc.*, 873 F.2d at 1143–44 (all dismissing with prejudice). This court's dismissal with prejudice does not provide a basis for reconsideration.

## 2.      The Record Shows No Substantial Similarity

Randolph contends that this court did not pay sufficient attention to the similarities between the works but "instead focuse[d] on the differences in some elements in the two works." Randolph argues that a proper comparison "must focus on the similarities, not the differences, between the two works." (Docket Entry No. 34 at 5).

Randolph's argument is flawed both legally and factually. Differences play an important role in determining whether two works are substantially similar. "As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that will they create the same aesthetic impact so that one will appear to have been appropriated from the other." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980). And this court's opinion did not focus solely on the differences. Instead, the opinion noted points of similarity between the two works but found that they were either insignificant or involved unprotectable elements. Randolph's motion for reconsideration points to a number of such similarities and asserts that they justify a finding of legally actionable "substantial similarity." (Docket Entry No. 34 at 5). Most of the similarities that Randolph identifies were addressed in this court's opinion. The additional similarities, and Randolph's new arguments, are addressed below; they do not provide a basis for reconsideration.

Randolph argues that in both the book and the movie, most of the action occurs in imaginary realms created and controlled by the thoughts and dreams of a person in the real world. In the book, the real-world person is Deja, the 18 year-old female protagonist of *Mystic Deja* who uses a journal written by her father to navigate through the imaginary "maze of existence." In the movie, the real-world person is Max, the 10-year-old male protagonist of *Shark Boy*, who uses a personal journal of his dreams as a guide to his imaginary realm. As this court noted, "the general concept of an imaginary world or realm . . . cannot be copyrighted." (Docket Entry No. 30 at 9); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea .

8

. . concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work.").

Randolph contends that the specific element of a journal as the vehicle through which both characters navigate their dream worlds makes this plot concept protectable creative expression. (Docket Entry No. 34 at 5–6). But controlling or accessing a dream world through a journal or literary work is a classic plot feature in works of fantasy and science fiction. *See, e.g., Niebla* ("*Fog*" or "*Mist*") (1914) (widely-read Spanish novel by Miguel de Unamuno about a man who learns his life is being written by the author of the book); *The NeverEnding Story* (1984) (film based on the 1979 German fantasy novel featuring a parallel world that the main character accesses through a novel describing it); *Myst* (1993) (graphic adventure video game in which the player explores a mystical island created and accessed through special books); *Inkheart* (2008) (fantasy film in which the protagonist's father has the power to control an imaginary realm and bring characters to life from a book); *Stranger than Fiction* (2006) (film about a man who discovers his life is being written by a novelist in her newest book). Like other *scenes à faire,* this plot feature is freely available for authors and creators to use in their creative works. *See Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 92 (2d Cir. 1976), *cert denied*, 429 U.S. 980 (1976). And, as discussed in the earlier opinion, the journals in the book and movie are very different. "The journal in *Mystic Deja* was created by Deja's father, who can update it with new entries despite his unconscious state . . . . The journal in *Shark Boy* is Max's own journal about his dreams." (Docket Entry No. 30 at 9). There is no substantial similarity between these elements.

Randolph also claims that the story lines about the protagonists in the book and movie are similar. Both Deja and Shark Boy begin their tales by searching for their fathers and end still searching for their fathers. The concept of a character in search of a parent is both familiar and

9

widely used.  "The general concept . . . of a character searching for a father . . . cannot be copyrighted."  (Docket Entry No. 30 at 9 (citing *Reyher,* 533 F.2d at 92 (the concept of a child searching for lost mother is not copyrightable)).

Randolph also asserts that the book and movie have substantially similar climactic fight scenes because both involve the protagonists learning to control their dream powers and using weapons that they have created with their imaginations.  (Docket Entry No. 34 at 6–7).  This is not a qualitatively important similarity; the fight scene is far from the heart of either work.  And the element of a fight scene featuring powers and weapons derived from the characters' imaginations is not protectable.  It flows  naturally from the general concept of an imaginary world controlled by a character's mind or thoughts.  *See Williams v. Crichton*, 84 F.3d at 589 (finding electrical fences, automated tours, dinosaur nurseries, and uniformed workers were all "classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo"); *Flynn v. Surnow*, 70 U.S.P.Q.2d 1231, 1237 (C.D. Cal. 2003) (finding that the use of a sniper rifle by an assassin was "an example of a *scene a faire* which flows naturally from a plot about an assassination attempt").  Moreover, the general notion of using the power of the mind as a weapon in battle has appeared countless times in well-known works of fantasy and science fiction.  *See, e.g.*, *Harry Potter and the Sorcerers' Stone* (1997) (featuring wizards who do battle and frequently conjure objects using the power of their minds); *Star Wars* (1977) (movie featuring "jedi warriors" who use "the force" to overcome their opponents)*; The Uncanny-Men* (comic series that first appeared in 1963, featuring many characters who do battle with their minds).[1]

---

[1]

  For a more comprehensive, though by no means complete, list of fantasy and science fiction works featuring a variety of psychic powers, *see* http://tvtropes.org/pmwiki/pmwiki.php/Main/PsychicPowers (last visited June 25, 2009).

Finally, as the defendants point out, the fight scenes in the two works play out quite differently in all other respects.  While the battle scene in the movie is highly physical and involves the protagonist, Max, and his companions fighting an army of the villains' minions, in the book Deja and her enemy engage in a one-on-one confrontation entirely in their minds.  (Docket Entry No. 42 at 9).  There is no substantial similarity between these elements.

Randolph also argues that this court erred in finding that the bikes in both works are not substantially similar.  As pointed out in the prior opinion, the bike in *Mystic Deja* "flies and allows Deja to escape from one terrain in the imaginary realm and enter another[,]" while the bike in the movie is "made of lava and does not fly or allow the characters to escape."  (Docket Entry No. 30 at 9).  Randolph asserts that the bikes are similar in that both characters conjure them using their journals in order to serve their transportation needs and both are potentially flying bikes.  (Docket Entry No. 34 at 7).  Randolph's motion for reconsideration attaches an image of the "Shark Bike" or "Shark Mobile" from Max's journal in the movie.  The image shows that the Shark Bike "Floats Like A Hover Craft."  (Docket Entry 34, Ex. 3 at 7).  In the movie, the "Shark Bike" does not fly; in the book Deja's bike does take off.  And as the defendants point out, "flying bikes have been common since the iconic scene from *E.T. the Extra-Terrestrial*, in which E.T. makes Elliott's bicycle fly to avoid being captured by the police."  (Docket Entry No. 42 at 10).  More recently, the *Harry Potter* series features a flying motorcycle used to pass between the human and the magical worlds and to escape from perilous situations.  *See, e.g., Harry Potter and the Sorcerer's Stone* (1997).  The fact that both works feature a bike, even a flying bike, is not a basis for copyright infringement, either alone or in combination with the other points Randolph identifies.

Finally, Randolph asserts that the court erred in finding that the works differed in "total concept and feel." (Docket Entry No. 34 at 7). After appraising the two works as a whole, this court concluded that the aesthetics and tone of the two works are very different. The mood and appearance of the book is dark and gothic. The movie is bright and busy. It features "3-D special effects" that can be seen with the special glasses that come with the DVD. (Docket Entry No. 30 at 10). In the prior opinion, this court cited *Williams v. Crichton*, 84 F.3d at 589, for the rule that when the "total concept and feel" of the two works differ substantially, the likelihood that the works are "substantially similar" is reduced. Randolph objects to the citation to *Williams*, arguing that the case is distinguishable because it involved comparing a children's book with "high tech horror stories," while *Mystic Deja* and *Shark Boy* are both works of adventure made for children. (Docket Entry No. 34 at 7–8). Randolph ignores the fact that comparing the overall concept and feel of two works is an established method of determining substantial similarity. "Essentially, the total-concept-and-feel locution functions as a reminder that while the infringement analysis must *begin* by dissecting the copyrighted work into its component parts in order to classify precisely what is not original, infringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation." *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc*., 338 F.3d 127, 134 (2d Cir. 2003) (emphasis in original). This comparison tool is not limited to cases involving works that are of distinct genres. *See Reyher*, 533 F.2d at 92 (finding that two children's books differed in their "total feel" when the plaintiff's work extensively developed its characters, while "the defendant's story [was] barren of meaningful setting or character development in its attempt to present its theme"). The look and feel of *Mystic Deja* and *Shark Boy* are very different, which weighs against a finding of substantial similarity. Even assuming that both works may be loosely characterized as "adventure stories," *Mystic Deja* features 18 and 19 year-olds and is targeted to older teens and young adults,

12

while *Shark Boy* features a ten-year-old protagonist and is a movie about and for much younger children.    Together with the significant differences between individual components and the unprotectable nature of these components, these differences in concept and feel amply support this court's conclusion that there was no substantial similarity as a matter of law.

### 3. The Additional Exhibits Do Not Provide a Basis for Reconsideration

Randolph also seeks leave to replead to assert additional specific similarities between the two works.  She has submitted a document supplementing the allegations made in her complaint and in her response to the defendants' motion to dismiss, which she claims preclude dismissal.  (Docket Entry No. 34, Ex. B).  Randolph has also submitted a PowerPoint presentation that performs a side-by-side comparison of the two works.  (Docket Entry No. 34, Ex. A).  These additional materials do not provide a basis for reconsideration.

For the most part, the newly submitted documents point out previously discussed similarities in more detail and provide quotes and images from the works.  None of the purported similarities that the documents elaborate on provide a basis for reconsideration.  To the extent that these documents raise any new arguments, they should have been presented in Randolph's opposition to the defendants' motion to dismiss.  "A Rule 59(e) Motion is not a 'vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment' but instead has a 'narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'"  *Baldwin*, 300 F. App'x at 323–24 (quoting *Templet*, 367 F.3d at 479).

Moreover, demonstrative aids of the type that Randolph has submitted are not useful in determining substantial similarity.  In analyzing whether a work is substantially similar to another and therefore infringing, a court must determine whether the lay observer would "detect piracy *without*

13

*any aid or suggestions or critical analysis by others.*  The reaction of the public to the matter should be immediate."  *Peel & Co.*, 238 F.3d at 398 (citing *Harold Lloyd Corp.*, 65 F.2d at 18; 4 NIMMER & NIMMER, NIMMER ON COPYRIGHT § 13.03[E][1][a], at 13-79) (emphasis added).  This court compared the book and movie to determine a lay observer's immediate response, a comparison properly made without the plaintiff's "aid or suggestions."

Even taking the new demonstrative exhibits into account, however, there is no basis for reconsideration.  The exhibits point out some similarities between the two works, most of which this court has already addressed.  These similarities are insignificant as a matter of law or do not involve protectable elements.  They do not show that there is a "substantial similarity" that would plausibly make the defendants' work infringing.

Randolph's motion for reconsideration is denied.

## II.     The Motion for Attorneys' Fees and Costs

The defendants seek $35,276.43 in legal fees plus $1,288.72 in costs and expenses.  The defendants argue that attorneys' fee awards in copyright infringement cases are "routinely awarded" and are only denied in "exceptional circumstances," and contend that Randolph presents "no reason to deviate from the general rule of awarding attorney's fees" in this case.  (Docket Entry No. 45 at 1).  Randolph counters that the Copyright Act "does not entitle a prevailing party to attorney's fees as a matter of course," and that this court "must exercise its equitable discretion to determine whether a fee is justified."  (Docket Entry No. 41 at 2).  Randolph contends that the circumstances do not justify an award of attorneys' fees and that the defendants have not shown that their requested fees are reasonable.  (*Id.* at 5).

14

### A.   The Legal Standard

The Copyright Act gives courts discretion to award attorneys' fees to the prevailing party:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.  In the Fifth Circuit, attorneys' fees awards are "'the rule rather then the exception and should be awarded routinely'" and "evenhandedly to both prevailing plaintiffs and defendants." *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008) (quoting *Positive Black Talk v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004)).  But "recovery of attorney's fees is not automatic." *Id.*  Fees "are to be awarded to prevailing parties only as a matter of the court's discretion," when such an award would "encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524, 534 (1994).  In determining whether a fee award is appropriate, a court should consider the factors set out in *Fogerty*:  "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Virgin Records*, 512 F.3d at 726 (quoting *Fogerty*, 510 U.S. at 543 n.19); *see also Creations Unlimited,* 112 F.3d at 817.  This list is not exhaustive.

If the court determines that the prevailing party is to receive fees, the court must calculate a "lodestar," the reasonable number of hours expended on successful claims multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (cited with approval in *Fogerty*, 510 U.S. at 534, as relevant to awarding attorneys' fees in copyright cases); *see also Bridgmon v. Array*

15

*Sys. Corp.*, 325 F.3d 572, 578 (5th Cir. 2003); *Cynthia Hunt Prods. v. Evolution of Fitness Houston*, No. 07-0170, 2007 WL 3047220 at *2 (S.D. Tex. Oct. 18 2007).  The court may adjust this lodestar up or down based on what is "reasonable under the circumstances" of the specific case.  *Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d Cir. 1986); *Cynthia Hunt*, 2007 WL 3047220, at *3.   In this final adjustment, the most important factor is the "degree of success obtained" by the prevailing party.  *Hensley*, 461 U.S. at 436.   Four other grounds for adjusting the lodestar may apply in copyright cases: the relative complexity of the litigation; the relative financial strength of the parties; the damages awarded; and whether the losing party acted in bad faith.  *Lieb*, 788 F.2d at 156.  As with all fee petitions, the moving party has the burden of demonstrating that its fee request is reasonable.  *Hensley*, 461 U.S. at 437; *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

### B.      Analysis

#### 1.      The Defendants are Entitled to an Award of Attorneys' Fees

The parties dispute whether an attorneys' fee award is appropriate in this case.  The defendants contend that all four *Fogerty* factors are present.  They argue that the suit "was completely without merit and frivolous" and was objectively unreasonable, both legally and factually.  The defendants note that Randolph's suit was dismissed under Rule 12(b)(6) for failure to state a claim.  The defendants speculate that Randolph's motive in filing suit "could have been an attempt to coerce" the defendants, which include "major entertainment companies," into "offering her a settlement rather than enduring the nuisance of litigation."  They argue that awarding fees to the defendants would deter similarly baseless lawsuits in the future.  (Docket Entry No. 32 at 4–5).  Randolph counters that her claims were neither frivolous nor objectively unreasonable and that "there is not a shred of

evidence" in the record to support an inference of improper motive. She argues that the defendants are "financially successful entities" with no need for an award to pay their legal fees. (Docket Entry No. 41 at 5). Each of these arguments is considered below.

### a.      Frivolous or Objectively Unreasonable

The fact that a copyright claim is dismissed after a court conducts a side-by-side comparison of the works does not necessarily mean that the claim was frivolous or objectively unreasonable. There is a difference between a suit that is "without merit" and one that is "patently frivolous." *See Positive Black Talk*, 394 F.3d at 382 n.23. In *Creations Unlimited*, for example, the Fifth Circuit upheld the district court's refusal to award attorneys' fees to the defendant despite finding on summary judgment that the works in question "differed . . . in too many respects for a layman to conclude that the works were substantially similar." 112 F.3d at 816. The district court had concluded that the legal claim, "though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal undergirding." *Creations Unlimited, Inc. v. McCain*, 889 F. Supp. 952, 954 (S.D. Miss. 1995). In *Armour v. Knowles*, 2006 U.S. Dist. LEXIS 81366, at *4 (S.D. Tex. Nov. 7, 2006), the district court similarly concluded that although a side-by-side comparison of the works established that they were not substantially similar as a matter of law, the plaintiff's claims were not frivolous.

A claim is more likely to be found frivolous or objectively unreasonable, however, when the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work are obvious. In *Mallery v. NBC Universal, Inc.*, No. 08-0655, 2009 WL 1532494, at *2 (2d Cir. June 3, 2009), for example, the Second Circuit upheld an award of attorneys' fees to the defendant because

17

"[t]he district court properly concluded that Plaintiffs' claims were objectively unreasonable"—"the profound dissimilarity between the [plaintiffs' documentary-style] works and the [television show] *Heroes* was indeed obvious."  The Eighth Circuit similarly upheld a fee award to the defendants on the basis of the plaintiff's "objectively unreasonable" claim where there was clearly no substantial similarity between the two works.  *Bar-Meir v. N. Am. Die Casting Ass'n*, 53 F. App'x 396, 2002 WL 31834811, at *1 (8th Cir. Dec. 19, 2002).  In *Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002), the Sixth Circuit upheld the district court's award of attorneys' fees to the defendant, affirming the district court's conclusion that the plaintiffs' claims were objectively unreasonable because the legal issues were clear and there was no case law from any circuit that supported the plaintiffs' position. In *Chivalry Film Products v. NBC Universal, Inc.*,  No. 05 Civ. 5627, 2007 WL 4190793, at *1 (S.D.N.Y. Nov. 27, 2007), the court concluded that an award of attorneys' fees was appropriate because the plaintiff's claim that the defendants' movie infringed his book was objectively unreasonable.  The court observed that "the works at issue could not be more different in 'total concept and feel,'" and the plaintiff's "attempts to show similarity between the works involve[d] the most trivial and generic of incidents."  *Id.*

As in *Mallery*, there is an obvious and  "profound dissimilarity" between *Mystic Deja* and *The Adventures of Shark Boy and Lava Girl*.  2009 WL 1532494, at *2.[2]  The issues of fact and law that Randolph's claims presented were neither complex nor close.  The specific points of similarity that

---

[2]      The defendants also claim that Randolph presented specific similarities between the novel and the movie that were "factually wrong" (for example, that there was a character named "Dark Reign" in the movie when there was not).  (Docket Entry No. 32 at 5). Randolph a responds convincingly that none of these constituted intentional misrepresentations of fact but were either attorney error or were disputed factual issues.  (Docket Entry No. 41 at 3–4).  Randolph's claims were not factually unreasonable.

Randolph identified, such as a flying bike or a dream journal, involve elements that, as a matter of settled law, are not copyrightable.  Randolph's claims of substantial similarity, if not frivolous, were objectively unreasonable.  These factors weigh in favor of awarding attorneys' fees to the defendants.

### b.    Motivation

The defendants speculate that Randolph may have sued because the defendants are "financially successful entities," while Randolph is an "individual author" whose novel was sold through "a self-publishing company of the sort typically used for low-volume book sales."  (Docket Entry No. 32 at 3).  The defendants do not offer evidence to support this speculation, relying instead on inference.  "[T]he utter lack of any substantial similarity between Plaintiff's novel and Defendants' movie makes it very difficult to imagine any proper motivation."  (*Id.*).  The defendants' argument does not show bad faith.  The cases that find a bad-faith basis for filing a copyright infringement suit involve  some direct evidence of improper motive that is lacking here.  In *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006), for example, the court found that the plaintiff had acted in bad faith because the defendant had stopped selling the allegedly infringing product as soon as the plaintiff complained; the plaintiff had rejected a settlement offer through which the plaintiff could have recouped all of the defendant's profits on the product; and a letter from the plaintiff's agent to the plaintiff's attorney produced in discovery revealed that the plaintiff thought the case was "great" because it involved "a lot of STUPID, obstinate, deep pocketed, WILLFUL INFRINGERS."  In *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079, 2008 WL 2688117, at *6 (S.D. Fla. 2008), the district court declined to make an explicit finding of bad faith but concluded that the defendants' uncontroverted allegations that plaintiff's counsel "repeatedly stated during the

litigation that if Defendant's album had not done well, the suit would not have been brought" weighed in favor of a fee award.

The defendants have cited no case, and this court has located none, that infers an improper motive or bad faith simply because a plaintiff makes an objectively unreasonable infringement claim against deep-pocket defendants.  Some evidence of bad faith must be shown.  *Cf. Armour*, 2006 U.S. Dist. LEXIS 81366, at *4 (declining to find improper motivation because "[t]he Court believes that Plaintiff was and continues to be sincere in her mistaken belief that her song and Beyonce's song sound alike").  This factor does not weigh in favor of an award of attorneys' fees in this case.

### c.    Compensation and Deterrence

The defendants argue that a fee award is appropriate because it would deter further baseless actions by Randolph, who moved for reconsideration after this court dismissed her claims with prejudice.  (Docket Entry No. 45 at 6).  The defendants also contend that a fee award would "send a clear message to other would-be plaintiffs that it is not acceptable to file meritless lawsuits against large companies," which would cause "[o]ther potential plaintiffs [to] think twice before filing such lawsuits if they knew that they could eventually be responsible for paying the defendants' attorneys' fees."  (Docket Entry No. 32 at 6).  The defendants argue that their ability to pay their legal fees without an award is irrelevant.  "Financially successful companies should not be penalized by being exempted from the general rule" of awarding attorneys' fees.  (Docket Entry No. 45 at 5).  Randolph counters that the defendants' lack of need for a fee award, combined with the chilling effect of a fee award that could "scare off" meritorious claims by future plaintiffs, weighs against awarding attorneys' fees.  (Docket Entry No. 41 at 5).

A prevailing party in a copyright case does not forfeit the ability to obtain a fee award because it is wealthy. A losing party who files an objectively unreasonable infringement case is not exempt from having to pay a fee award based on limited means. *See, e.g., Microsoft Corp. v. Software Wholesale Club, Inc.,* 129 F. Supp. 2d 995, 1012 (S.D. Tex. 2000). But as the Seventh Circuit has explained, the *Fogerty* rule of "evenhandedness" in awarding fees in copyright infringement cases – in particular, the compensation factor – was intended to promote the Copyright Act by ensuring that parties with limited resources could afford to prosecute or defend against opponents with plentiful resources. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). The Seventh Circuit observed that "unlike civil rights suits, where while a prevailing plaintiff is presumptively entitled to an award of fees, a prevailing defendant is entitled to such an award only if the suit was groundless . . . in copyright suits 'prevailing plaintiffs and prevailing defendants are to be treated alike.'" *Id.* (quoting *Fogerty*, 510 U.S. at 534). The court reasoned that the parties are treated differently in civil rights suits because such suits nearly always involve "a little guy suing a big guy." *Id.* By contrast, "[e]ntities which sue for copyright infringement as plaintiffs can run the gamut from corporate behemoths to starving artists; the same is true of prospective copyright infringement defendants." *Fogerty,* 510 U.S. at 524 (quoting *Cohen v. Virginia Elec. & Power Co.*, 617 F. Supp. 619, 621 (E.D. Va. 1985)). The considerations of evenhandedness and compensation are directed to giving the "little guy" the financial opportunity to vindicate her rights. *Assessment Techs.*, 361 F.3d at 436; c*f. Armour*, 2006 U.S. Dist. LEXIS 81366, at *4 (noting, in a suit by an individual songwriter against the established artist Beyonce and various music-publishing companies, that "[t]here [was] no particular need . . . for compensation to Beyonce and the other defendants").

21

The need for deterrence, however, weighs in favor of a fee award to the defendants.  The cases show that when a copyright infringement claim is objectively unreasonable, deterrence is an important factor.  As one court explained:

> [T]he need for deterrence against objectively unreasonable copyright claims is significant.  Just as attorney fee awards may chill litigation of *close* cases, preventing the clear demarcation of the boundaries of copyright law, the denial of such awards in *objectively unreasonable* cases also disserves the purposes of copyright law, by failing to protect the owners of valid copyrights from the cost of frivolous litigation.  Furthermore, the denial of fees and costs to a prevailing defendant in an objectively unreasonable copyright case may spur additional frivolous lawsuits, of exactly the sort that an award of fees and costs is designed to "chill."

*Chivalry Film Prods.*, 2007 WL 4190793, at *3 (citations omitted).  "Consistent with furthering the purposes of the Copyright Act . . . a party that presents only objectively unreasonable claims or defenses should not be encouraged in such conduct and, in fact, should pay the attorney's fees associated with the prevailing party's resulting necessary prosecution or defense."  *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1246 (S.D. Fla. 2008) (citations omitted); *see also Gen. Universal Sys.*, 379 F.3d at 159 (affirming fee award where plaintiff filed new suit against different defendants raising same copyright issues rejected as a matter of law on summary judgment); *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008) (upholding attorneys' fees because the plaintiff had pursued its claim even after the entry of judgment in a related case with preclusive effect made the plaintiff's claim "patently futile"); *Bar-Meir*, 2002 WL 31834811, at *1 (affirming fee award based on the district court's "finding that the action was objectively unreasonable and there was a need to deter future similar suits"); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 1998) (An award of attorneys' fees will "beneficially deter, rather than excessively chill future lawsuits.").

Randolph's copyright infringement claims were objectively unreasonable. The need for deterrence supports an award of attorneys' fees to the defendants. The need for compensation does not.

### d.    Balancing the Factors

The conclusion that Randolph's claim was objectively unreasonable is entitled to "substantial weight in determinations whether to award attorneys' fees." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001); *see also Creations Unlimited*, 112 F.3d at 817; *Positive Black Talk, Inc.*., 394 F. 3d at 382–83; *Virgin Records*, 512 F.3d at 727 (all upholding decisions that denied fee awards only after finding that the plaintiff's claims were not objectively unreasonable); *Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729, 733 (7th Cir. 1996) (holding that "the district court abused its discretion by failing to award attorney's fees based on the objective unreasonableness of [plaintiff's] complaint"); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (awarding fees in part because plaintiff's claims were "factually unreasonable"); *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994) ("[T]he objective reasonableness factor strongly weighs in favor of awarding attorney's fees and costs."). Because Randolph's claims were objectively unreasonable, the deterrence factor provides an additional basis for awarding fees to the defendants. Although the evidence does not support an inference that Randolph brought her action in bad faith or with an improper motive, the totality of the factors set out in *Fogerty* weigh in favor of a fee award.

### 2.    The Lodestar Calculation

### a.    The Hourly Rate

The first step in computing the lodestar is determining a reasonable hourly rate. *See Hensley*, 461 U.S. at 433. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The party seeking fees bears the burden of establishing the market rate and should present the court with evidence from which the court can determine the reasonableness of the proposed rate. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

The defendants were represented by the firm Locke Lord Bissell & Liddell LLP. One partner, two associate attorneys, and one paralegal staffed the case. The partner, Roy Hardin, has submitted an affidavit stating that the focus of his practice is intellectual property litigation, he is familiar with the usual and customary fees charged in this type of action, and "[t]he attorney's fees and costs incurred in this case are reflective of the types of activity normally engaged in by counsel charged with developing a defens[e] and preparing a motion to dismiss the frivolous claims brought by Randolph." (Docket Entry No. 32, Ex. A at 3). Hardin's rate was $510 per hour. The two associates were billed at $300 and $220 per hour, and the legal assistant at $170 per hour. Randolph does not challenge the reasonableness of these rates. This court takes judicial notice of the Texas State Bar's "Hourly Rates in 2005 Report," the most recent such report. This report states that the median hourly rate for intellectual property attorneys in Texas was then $350 per hour and a high rate was $700 per

hour.[1]   The hourly rates submitted by Locke Lord are consistent with prevailing Houston market rates for intellectual property attorneys and are reasonable.

### b.        The Number of Hours Reasonably Expended

A fee application should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).   "Hours that are excessive, redundant, or otherwise unnecessary" are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.   *Hensley,* 461 U.S. at 433–34 (internal quotations and citations omitted). The court may also exclude hours from the lodestar calculation that were not properly documented. *See id.*

Hardin's affidavit attaches two invoices for legal services that Locke Lord billed to the defendants for work in this case.   The defendants are seeking compensation for all entries in these invoices.   The first entry is for November 10, 2008, the date the complaint was filed.   The last entry is for January 31, 2009, the date the defendants filed the reply to the motion to dismiss.   The defendants are not seeking attorneys' fees for the services that Locke Lord provided after January 31, 2009, which included responding to the motion for reconsideration and filing the fee application.   The invoices show that the defendants' attorneys spent 131 hours on this case between November 10,

---

[1]

*See* Texas State Bar, Dep't of Research & Analysis, *Hourly Rates in 2005 Report* at 14 (Sept. 21, 2006), *available at* http://www.texasbar.com/Template.cfm?Section=Research_and_Analysis&Template=/ ContentManagement/ContentDisplay.cfm&ContentID=15888 (last visited June 26, 2009).

2008 and January 31, 2009.  The large majority of this work was done by one of the associates, who

billed 126.25 hours at $300 per hour.

A summary of the time billed by the defendants is set out below:

| Task | Hours | Rate | Amount |
|---|---|---|---|
| Background research | 9.5 | $300 | $2,850.00 |
| Activities relating to Fireman's Fund | 6.5 | $300 | $1,950.00 |
| Researching and drafting the Answer | 20.5 | $300 | $6,150.00 |
| | 2.75 | $220 | $605.00 |
| Preparing the Joint Discovery and Case Management Plan | 10.75 | $300 | $3,225.00 |
| Researching, drafting, and filing the Motion to Dismiss | 1.25 | $510 | $637.50 |
| | 29.75 | $300 | $8,925.00 |
| | 0.25 | $170 | $42.50 |
| Researching, drafting, and filing the Reply to the Motion to Dismiss | 37 | $300 | $11,100.00 |
| Court appearances | 8.5 | $300 | $2,550.00 |
| Entries too redacted to classify | 0.5 | $510 | $255.00 |
| | 3.75 | $300 | $1125.00 |
| Sub-Totals | 1.75 | $510 | $892.50 |
| | 126.25 | $300 | $37,875.00 |
| | 2.75 | $220 | $605.00 |
| | 0.25 | $170 | $42.50 |
| Grand Total | 131 | | $39,415.00 |

Locke Lord's bills provided a 10.5% discount on the total fees, reducing the total to $35,276.43.  The defendants seek this reduced amount.

Randolph argues that the $35,276.43 sought is unreasonable in several respects.  First, Randolph argues that the defendants have not segregated time spent defending against the copyright claim, for which they seek fees, from time spent defending against the Lanham Act and Texas Deceptive Trade Practices Act (DTPA) claims, for which they do not.  (Docket Entry No. 41 at 5–6).  The Lanham Act, unlike the Copyright Act, only permits fee awards in "exceptional cases," such as those involving bad faith.  *See* 15 U.S.C. § 1117; *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 786 (2d Cir. 1988).  A similarly strict standard applies to fee awards to defendants under the DTPA.  TEX. BUS. & COM. CODE § 17.50(c); *Barkhausen v. Craycom, Inc.*, 178 S.W.3d 413, 421 (Tex. App.–Houston 2005, writ denied).  The defendants do not contend that a fee award for their Lanham Act or DTPA claims is appropriate.  Instead, the defendants argue that segregation is not required because "this entire lawsuit fundamentally arises from Plaintiff's claim of copyright infringement." (Docket Entry No. 45 at 1).

Segregation of hours spent on different claims is not required when the claims are "so intertwined that it is impossible to differentiate" between them.  *See Gracie v. Gracie*, 217 F.3d 1060, 1069–1070 (9th Cir. 2000) (requiring the district court to apportion fees between Lanham Act claims and non-Lanham Act claims unless the claims "are so intertwined that it is impossible to differentiate" between them).  Randolph's trademark and DTPA claims were closely intertwined with her copyright claims.  This court dismissed Randolph's trademark claim because her argument was not that "the defendants offered for sale tangible goods that she produced, but that they copied from a book that she wrote in creating the movie."  (Docket No. 30 at 12).  This court dismissed

27

Randolph's DTPA claim because it alleged no facts that could support recovery of damages "based on claims 'different in kind' from the wrongful use of her copyrighted book." (*Id.*). There was a significant overlap between the work required to defend against these claims and the work required to defend against the copyright claim, which makes segregation difficult. But the defendants likely spent some time on these claims that did not overlap with the copyright infringement claims—time spent, for example, researching the elements of the claims and drafting the portions of the motion to dismiss that addressed them. A reduction of three hours of the associate's time at $300 per hour is appropriate.

Randolph also argues that the defendants are improperly seeking fees for the 6.5 hours spent seeking coverage from their insurer, Fireman's Fund, for legal expenses. This time included corresponding with the insurer and drafting and finalizing an "Initial Strategy, Plan, and Budget" for the insurer. Randolph contends that this time was "not reasonably incurred in connection with the defense of [the] copyright claim." (Docket Entry No. 41 at 6). The case law supports Randolph's position. *See, e.g., Baza v. Chevron Oil Serv. Co.*, No. 95-1574, 1996 WL 711506, at *3 (E.D. La. Dec. 10, 1996) (excluding hours spent pursuing insurance coverage for claim because "there is neither a 'common core of facts' nor any 'related legal theories' between Chevron's claim for insurance coverage and its defense of the main action"); *Baseball at Trotwood, LLC v. Dayton Professional Baseball Club, LLC*, 493 F. Supp. 2d 972, 985 (S.D. Ohio 2005) (declining to award attorneys' fees for time spent seeking coverage from insurance carrier because this was not time advanced in support of the successful claim). A reduction of 6.5 hours of the associate's time at $300 per hour is appropriate.

An award is inappropriate for the 23.25 hours that the defendants spent researching, drafting, and preparing to file an answer to Randolph's complaint. This answer was never filed. Instead, the defendants filed a motion to dismiss under Rule 12(b)(6). The defendants do not contend that any of the work done on the answer was later applied to the motion to dismiss. The work done on the answer was not reasonably incurred in connection with the defendants' successful defense of the copyright claim. A reduction of 20.50 hours of time at $300 per hour and of 2.75 hours at $220 per hour is appropriate.

Finally, the time shown in heavily redacted portions of the billing records is deducted from the lodestar. Redaction of billing records is acceptable so long as the court has sufficient information to form an opinion on the reasonableness of the fees. *See Vantage Trailers, Inc. v. Beall Corp.*, No. 06-3008, 2008 WL 4093691, *3 n. 2 (S.D. Tex. Aug. 28, 2008). Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended. Some of the defendants' entries fall into this category. The December 1, 2008 entry for "E-mail correspondence," for example, does not identify the subject of the emails or otherwise provide sufficient information  to assess whether the time expended was reasonable in defending against Randolph's copyright claim. A review of the records revealed  4.25 hours billed in entries too heavily redacted to provide adequate information. A reduction of 0.5 hours at $510 per hour and 3.75 hours at $300 per hour is appropriate.

Totaling all of the above reductions, Hardin's hours for purposes of calculating the lodestar are reduced by 0.5, from 1.75 to 1.25 at $510 per hour. The associate's hours billed at $300 per hour are reduced by 33.75 hours, from 126.25 to 92.5. The associate's hours billed at $220 per hour are reduced by 2.75 hours, yielding a total of zero. The legal assistant's hours are unchanged. Hardin's

1.25 hours multiplied by his $510 hourly rate yields $637.50.  The 92.5 hours multiplied by the $300 hourly rate yields $27,750; the 0.25 hours multiplied by the $170 hourly rate yields $42.50.  These numbers total $28,430.  Applying the 10.5% reduction contained in the invoices, the lodestar is $25,444.85.

### 3.    Adjustments to the Lodestar

A court may adjust the lodestar to reflect what is "reasonable under the circumstances" of the specific case.  *Lieb*, 788 F.2d at 156; *Cynthia Hunt*, 2007 WL 3047220, at *3.  The factor of the "degree of success obtained" by the prevailing party,  *Hensley*, 461 U.S. at 436, weighs in favor of no reduction.  The defendants in this case succeeded in early dismissal.  But this court should also examine the relative complexity of the litigation; the relative financial strength of the parties; the damages awarded; and whether the losing party acted in bad faith.  *Lieb*, 788 F.3d at 156.

The first two of these factors—complexity and the relative financial strength of the parties—support downward adjustment.  Randolph's copyright claim was neither novel nor complex.  *See, e.g., Williams v. Crichton*, 891 F. Supp. 120, 121–22 (S.D.N.Y. 1994) (copyright claim of substantial similarity between a book and movie was not novel or complex where "[t]hese similarities . . . all flow[ed] from the concededly uncopyrightable concept of a dinosaur zoo").  And the defendants emphasized Randolph's comparative financial weakness in their attorneys' fee briefing, speculating that Randolph may have been motivated to bring this suit against the "financially successful" defendants because of the "limited commercial success" of her own book and suggesting that Randolph may have hoped that the nuisance value of the suit would "coerce the Defendants into offering her a settlement."  (Docket Entry No. 32 at 3–4).

In *Bridgmon v. Array Systems Corp.*, 325 F.3d at 578, the Fifth Circuit upheld the district court's decision to reduce the lodestar in a copyright action by approximately 70%, from $177,507 to $50,000. The Fifth Circuit noted that summary judgment had been "readily granted." The court did not address whether there was any disparity in the financial strength of the parties. In *Douglas v. Osteen*, No. 08-3097, 2009 WL 641218, at *3 (3d Cir. Mar. 13, 2009), the Third Circuit upheld an award in a copyright action of $5,000, on a total of $75,000 sought, almost a 95% reduction. The district court had reasoned that this amount accommodated the plaintiff's *pro se* status while serving as a sufficient deterrent against the plaintiff's tendency toward bad-faith litigation conduct. *See* Order, *Douglas v. Osteen*, No. 07-3925, (E.D. Pa. June 12, 2008). In *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690, 2001 WL 180124, at *1 (S.D.N.Y. Feb. 22, 2001), the court reduced the requested fee amount by almost 90% in order to "take into account the financial circumstances of the plaintiff," who had a "modest income" and liability for back taxes, but who "d[id] have some earning power as the result of her [medical] degree." In *Williams v. Crichton*, No. 93 Civ. 6829, 1995 WL 449068, at *1 (S.D.N.Y. July 26, 1995), the court concluded after dismissing the plaintiff's claims of substantial similarity on summary judgment that "the relative financial strength of the parties [wa]s so disproportionate" that "the purposes of the Copyright Act [would] be served by a relatively small award." The court did not indicate the amount of fees that the defendants sought. The court, although "fully recognizing the thorough and professional work done on this case by defendants' counsel," awarded only $3,000 total in fees and costs. *Id.*

A reduction to the lodestar would promote the purpose of the Copyright Act and the disproportionate financial positions of the parties, while recognizing that the plaintiffs' claims were objectively unreasonable and the work by defendants' counsel was both professional and appropriate.

31

*See, e.g., Lieb*, 788 F. 2d at 156; *Williams v. Crichton,* No. 93 Civ. 6829, 1995 WL 449068, at *1. The litigation was not novel or complex, and this court disposed of Randolph's claims early by granting the defendants' Rule 12(b)(6) motion to dismiss.  The defendants have emphasized the disparity in the parties' financial positions.  But Randolph was not *pro se*; she has been represented by counsel.  A reduction to the lodestar of 85% is appropriate.  Randolph must pay $3,816.73 in attorneys' fees to the defendants.

### C.    Costs

Finally, the defendants seek $1,288.72 in costs under Federal Rule of Civil Procedure 54(d). Rule 54(d)(1) provides, in relevant part, that "[u]nless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006).   In addition, Section 505 of the Copyright Act provides: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof."  17 U.S.C. § 505.

Randolph does not challenge the amount of costs claimed and there does not appear to be a basis for doing so.  These costs were reasonably incurred and are compensable under the Rules of Federal Procedure and the Copyright Act.  Randolph is ordered to pay $1,288.27 in costs to the defendants.

### III.    Conclusion

Randolph's motion for reconsideration is denied.  The defendants are awarded $3,816.73 in attorneys' fees and $1,288.27 in costs.

SIGNED on June 29, 2009, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge